UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RONNIE LEE BROOKS,

    Defendant.

                                   /

Criminal Case No. 19-20203

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING RONNIE LEE BROOKS' MOTION TO REDUCE SENTENCE [71]**

On July 29, 2019, Ronnie Lee Brooks pleaded guilty to conspiracy to possess with intent to distribute a controlled substance, including over 550 grams of cocaine, in violation of 21 U.S.C. § 846. (ECF No. 43). On November 25, 2019, the Court sentenced Brooks to forty months imprisonment with four years of supervised release. (ECF No. 52, PageID.205-06).

On November 27, 2020, Brooks moved for compassionate release and appointment of counsel, citing the risk posed to him by the pandemic in light of his health conditions. (ECF No. 71, PageID.624; ECF No. 72). On January 11, 2021, the Court granted Brooks' Request for Appointment of Counsel [72]. (ECF No. 82). For the reasons outlined below, Brooks' Motion to Reduce Sentence [71] will be **GRANTED**.

## BACKGROUND

Brooks was born in Monroe, Michigan in 1982 and was raised by his mother and father. (PSR ¶¶ 48, 49). He considers himself to have been "blessed" with "good parents," but he also experienced hardship growing up. (*Id.* ¶ 50). As a child, Brooks lived in a trailer along with ten other members of his immediate and extended family. (*Id.* ¶¶ 48, 49). He experienced the untimely deaths of several of these family members due to such circumstances as murder, drug overdose and suicide; his mother died of a heart attack when he was only twenty-three years old. (*Id.* ¶¶ 49, 50). Brooks has a seventeen-year-old son who currently lives with Brooks' stepmother and father in Belleville. (*Id.* ¶ 52). The two spent a lot of time together prior to Brooks' arrest. (*Id.*).

Brooks was diagnosed with attention deficit hyperactivity disorder when he was twelve or thirteen and was briefly medicated. (*Id.* ¶ 56). As a teenager, Brooks was placed in counseling by his mother but only saw a therapist a "few times" before therapy was discontinued. (*Id.*).

Brooks withdrew from Monroe High School in November 1998 after struggling academically and getting involved with drugs. (*Id.* ¶ 62). He received his high school diploma from Continental Academy, an online school, in 2004. (*Id.* ¶ 61). Brooks' last job was with American Graphics in Taylor, Michigan. (*Id.* ¶ 64). He has been unemployed since the company went out of business in 2013 or 2014,

however, prior to his arrest, he occasionally designed and printed t-shirts, stickers, and window decals for cash. (*Id.* ¶ 63).

When he was twenty-three, Brooks was shot in the leg while traveling to a birthday party with a friend. (*Id.* ¶ 55). He took Percocet and Neurontin for pain management after this injury and became addicted, which ultimately led to his use of and addiction to cocaine and crack. (*Id.*). Since 2005, Brooks has gone through multiple cycles of sobriety and relapse. (*Id.* ¶ 59). He states that his drug use has been related to both emotional and pain management. (*Id.*).

The bulk of Brooks' criminal record stems from conduct during his late teens and early twenties. (*Id.* ¶¶ 33-41). Apart from the instant offense, his only convictions in the last decade have been for driving with a suspended license (2012) and a single drug sale (2018). (*Id.* ¶¶ 42-43).

Brooks was arrested for his current offense on October 18, 2018. (*Id.* ¶ 13). Leading up to his arrest, authorities had engaged in surveillance of a drug trafficking organization ("DTO") made up of Markeith Lee Browning, Jimmy Earl Hawkins and Brooks, and seized nearly three kilograms of cocaine and approximately seventy-five grams of heroin from a car registered to Hawkins and driven by Brooks. (*Id.* ¶¶ 12-13). Brooks admitted an addiction to crack cocaine and said that he had been compensated for his driving for the DTO with crack cocaine for his personal use. (*Id.* ¶ 17). Brooks admitted to conducting two other similar trips for drugs and

was therefore held accountable for a total of 9 kilograms of cocaine and 225 grams of heroin. (*Id.* ¶ 18).

Brooks is currently thirty-nine years old, incarcerated at FCI Terre Haute, and scheduled for release on October 10, 2021. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register Number 57427-039) (last visited Feb. 4, 2021).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

> **(A)** [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> **(i)** extraordinary and compelling reasons warrant such a reduction.
> [. . .]
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).

A. Exhaustion

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Brooks submitted requests to his warden on May 1, 2020 and June 22, 2020. (ECF No. 90, PageID.1030; ECF No. 88-4, PageID.1022-23). After the warden denied release on July 23, 2020, Brooks filed a Regional Administrative Remedy Appeal on August 6, 2020, which was subsequently denied on September 24, 2020. (ECF No. 88-5, PageID.1024; ECF No. 87-2, PageID.990; ECF No. 87-3, PageID.992). The Government concedes that Brooks has exhausted. (ECF No. 88, PageID.1006).

> Accordingly, the Court must now proceed through a three-step inquiry:
>
> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." [*Dillon v. United States*, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (first four alterations in original) (footnotes omitted).

B. <u>Extraordinary and Compelling Reasons for Release</u>

"[D]istrict courts have full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109. Here, the Court finds that the risk posed to Brooks from his medical conditions and the spread of COVID-19 at USP Terre Haute constitutes such a reason.

Brooks suffers from multiple underlying medical conditions that exacerbate COVID-19: Type 2 diabetes mellitus, obesity (height: 5'9", weight: 253 lbs.), hypertension, and asthma. (PSR ¶ 54; ECF No. 87-4, PageID.994; ECF No. 90, PageID.1028). His conditions require daily insulin, daily use of an inhaler, and other prescription medications. (ECF No. 90, PageID.1028). In addition to diabetes, asthma and hypertension, Brooks' recorded medical conditions include opioid and cocaine use disorders, depression, anxiety, myopia, gastro-esophageal reflux, and chest, back and foot pain. (ECF No. 71, PageID.637).

The Center for Disease Control lists type 2 diabetes mellitus and obesity as risk factors for severe illness if COVID-19 is contracted. *People with Certain Medical Conditions*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/3PE9-QP2Y] (last updated Feb. 3, 2021). Moderate-to-severe asthma and hypertension are listed as possible risk factors. *Id.*

Brooks' risk is further exacerbated by the current confirmed cases of COVID-19 at FCI Terre Haute. According to the BOP's testing figures, Terre Haute currently has thirty-four positive COVID-19 cases (thirty-two inmates and two staff members). *See COVID-19 Coronavirus*, F ED. B UREAU P RISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/SM6B-RD3V] (last updated Feb. 4, 2021).

The Government concedes that Brooks' established risk factors for severe illness from COVID-19 qualify as extraordinary and compelling reasons under § 3582(c)(1)(A) and thereby satisfy the initial eligibility criteria for compassionate release. (ECF No. 88, PageID.1012).

C. Applicable Policy Statements

Where, as here, an "incarcerated person[] file[s] [a] motion[] for compassionate release, [the district] judge[] may skip step two of the § 3582(c)(1)(A) inquiry and ha[s] full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d 1098, at 1111. Accordingly, the Court finds that there are extraordinary and compelling reasons for Brooks' release.

D. Section 3553(a) Factors

The last step a district court contemplating a motion for compassionate release must take is to consider the applicable sentencing factors listed in 18 U.S.C. §

3553(a). "'[A]s long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor." *Id.* at 1114 (quoting *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)). With that in mind, the § 3553(a) factors are as follows:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
>   **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   **(B)** to afford adequate deterrence to criminal conduct;
>   **(C)** to protect the public from further crimes of the defendant; and
>   **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for—
>   **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>   [. . .]
> **(5)** any pertinent policy statement—
>   [. . .]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Court's consideration of these factors is demonstrated both in the analysis below and on the record of the February 4, 2021 hearing.

Brooks has struggled with addiction since his early twenties. In fact, addition appears to have been the driving force behind much of Brooks' criminal history. Brooks' co-defendants even compensated him with cocaine to secure his participation in the instant offense. (PSR ¶ 17). Accordingly, the Court views Brooks' criminal record, much of which stems from conduct in his late teens and early twenties, against this backdrop of addiction. (*Id.* ¶¶ 33-41).

In analyzing the § 3553(a) factors, the Court looks to the circumstances as they are now, not as they were at the time of Brooks' sentencing. At his hearing, Brooks persuasively testified regarding his rehabilitation since entering BOP custody. Brooks' reference to the addiction management tools he has gained while participating in the Residential Drug Abuse Program ("RDAP") were particularly notable given the interwoven nature of his addiction and prior criminality. In addition, Brooks' accomplishments in prison far outweigh his limited disciplinary record. Beyond participating in RDAP, Brooks has taken classes in business, sociology, trades, finance, journalism, Spanish, hospitality, community resources, health, and employment. (ECF No. 71, PageID.635; ECF No, 87-5, PageID.1001). Brooks' disciplinary record, meanwhile, contains only one minor incident—being

rude to staff member—and at this point, he has remained free of discipline for over a year. (ECF No. 87, PageID.986).

Ultimately, this was Brooks' first time in Federal prison, and the above accomplishments, combined with Brooks' demeanor and testimony at the hearing persuade the Court that the time he has served has been sufficient, but not greater than necessary, to teach him respect for the law and to deter future criminal conduct.

Brooks reentry will be supported by his family, as evidenced by his plans to move-in with his father, stepmother, and son upon release. (ECF No. 71, PageID.636). Brooks' father believes in his rehabilitation and has agreed to assist him in seeking employment and remaining drug free. (ECF No. 90, PageID.1029, 1040). The Court has confidence that this supportive environment will help Brooks stay on the right track and avoid the same mistakes he has made in the past. Accordingly, the Court finds that additional incarceration is not needed to protect the public.

Brooks' crime was serious. Indeed, he earned the sentence the Court originally gave him, however, his overlapping risk factors for severe illness from COVID-19 and the progress he has made in RDAP persuade the Court that there is little to be gained and much to be lost by keeping him in prison for another few months. Whatever marginal benefit the remaining eight months of his sentence may effectuate, the risk to Brooks in custody under current circumstances is too great a

price to pay. Accordingly, the Court finds that Brooks has "ma[d]e a compelling case as to why the . . . [C]ourt's § 3553(a) analysis [should] be different . . . today" than at the time of sentencing and that a reduction in sentence is appropriate. *United States v. Sherwood*, No. 20-4085, Slip. Op. at 3 (6th Cir. Feb. 2, 2021) (citing *United States v. Navarro*, No. 20-5640, 2021 U.S. App. LEXIS 2409, at *9 (6th Cir. Jan. 28, 2021)).

## CONCLUSION

**IT IS ORDERED** that Brooks' Motion to Reduce Sentence [71] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Brooks be **IMMEDIATELY RELEASED** to begin his four-year term of **SUPERVISED RELEASE**, as outlined by the November 27, 2019 Judgment (ECF No. 52, PageID.206-08), including the following additional Special Conditions:

> **The defendant shall undergo a strict fourteen-day quarantine upon his release and shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.**

    **SO ORDERED**.

Dated: February 5, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge